UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-346-FL

| | |
|---|---|
| MILDRED C. CHRISTMAS,<br>    Plaintiff, | )<br>)<br>) |
| v. | )  **MEMORANDUM &**<br>)  **RECOMMENDATION**<br>) |
| NORTH CAROLINA DEPARTMENT OF<br>ADMINISTRATION, STATE OF NORTH<br>CAROLINA,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

Plaintiff Mildred C. Christmas brings this action for injunctive and monetary relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and N.C. Gen. Stat. § 7A-759, for alleged employment discrimination and retaliation. [DE-2-2, p.3]. Before the Court is a motion for summary judgment filed by Plaintiff's employer, Defendant North Carolina Department of Administration. [DE-23]. Plaintiff has responded to the motion [DE-27], Defendant has replied [DE-28], and the matter is now ripe for adjudication. The motion was referred to the undersigned December 29, 2010, for submission of a memorandum and recommendation. For the reasons stated herein, the undersigned recommends that Defendant's motion for summary judgment be granted in part and denied in part.

**I.    Background**

Plaintiff is an African American female employed by Defendant since June 1, 1994. [DE-27-20, p.2]. Plaintiff works as a Procurement Specialist III in the Division of Purchase and Contract, where she is responsible for reviewing and awarding contracts "for various specialized and complex services and commodities valued at millions of dollars." [*Id.*].

Before joining the Department of Administration, Plaintiff worked as a records management analyst at the North Carolina Department of Cultural Resources for fourteen years. [DE-27-20, p.2].

On March 1, 2006, Defendant adopted an Equal Employment Opportunity Plan ("EEO plan") to comply with the EEO policy of North Carolina. The EEO plan stated, *inter alia*, that

> [t]o ensure that equal employment opportunity exists throughout the Department of Administration, a results oriented program will be implemented to overcome the effects of past discrimination and to eliminate any artificial barriers to employment opportunities for all qualified individuals that may exist in any of our programs.
> The Equal Employment Opportunity (EEO) program shall ensure greater utilization of all persons by identifying the underutilized groups based upon their representation in the workforce and making special efforts to increase their participation in recruitment, selection, training and development, upward mobility programs, and any other terms, condition, or privilege of employment.

[DE-23-7, p.4]. The EEO plan also acknowledged that

> [s]tudies have shown that discriminatory practices occur more often in the selection process than in any other area of employment practices. An effective EEO plan includes procedures to review and evaluate each step of the selection process to assure that job requirements, selection procedures, hiring standards, and the placement process contribute to the achievement of program objectives and does not discriminate in the categories of race, color, religion, creed, sex, national origin, age, disabling condition, sexual orientation, and marital status.

[*Id.* at p.26]. The EEO plan identified underutilization of African American females in the "Officials and Administrators" category within the Division of Purchase and Contract ("P&C"). Defendant had no African American female managers in P&C. The EEO plan established a recruitment goal of hiring an African American female as a State Purchase Administrator to resolve this underutilization. [*Id.* at p.21]. The EEO plan did not require Defendant to hire an African American female, however.

On July 18, 2006, the DOA announced a vacancy for the position of State Purchasing Administrator, Position No. 6709 ("SPA position"), in P&C. The job posting described the SPA position as follows:

> This is an administrative and management position that functions as the Purchasing Manager that oversees Purchasing Group 2. This position directs and supervises the activities and operations of this purchasing group consisting of six purchasers and one support person in performance of statutory duties, which involves oversight of contracts valued at millions of dollars; as well as ensures delivery of customer satisfaction and adherence to statutory responsibilities to State Agencies, Community Colleges, and Universities. Manager will ensure purchasers communicate with the supplier community to convey procurement procedures and to improve contractor performance. Manager will ensure use and promotion of e-commerce initiatives. Manager coordinates the workflow of open-market purchases and statewide term contracts assigned to the group and monitors these contracts to identify potential improvements. Frequently will participate in resolving contract controversies/protests to ensure positive outcomes for the State which may involve interaction with the Attorney General's Office. Develops relationships that extend the group's ability to reach more customers, provides proper guidance and direction to assigned staff, and implements processes that will develop and enhance procurement competencies within the group. The Manager is expected to participate in activities that will lead to greater awareness and increased compliance with the procurement laws of the State of North Carolina. In addition, the Manager participates in a variety of seminars, conferences and meetings which may involve some travel to include overnight. As a manager, this position is responsible for the development and administration of work plans to meet unit objectives, coaching and counseling of employees, and proper reporting of group activities and achievements. Manager also assists in the analysis and tracking of emerging procurement issues. The employee in this position plans, prioritizes, and prescribes the group's processes needed to achieve objectives within the framework of relevant laws and departmental policies. Knowledge of legal, technical, and ethical principles of large scale purchasing is necessary. Work requires the ability to make sound application of these principles to complex purchasing problems. Knowledge of large scale purchasing methods and procedures is required. Ability to supervise and manage people through planning, interaction management, problem solving, goal setting and leadership. Position requires an individual who is able to interact well and establish effective working relationships with associates, officials and vendors. Ability to effectively explain purchasing decisions to agency officials, bidders, and the public. This position requires an individual who has well-developed interpersonal, communication, managerial, organizational and computer skills. Work is performed on a personal computer in a Windows environment using Microsoft Office software in a Local Area Network (LAN) configuration.

3

Case 5:09-cv-00346-FL   Document 30   Filed 03/22/11   Page 3 of 20

TRAINING AND EXPERIENCE: Graduation from a four-year college or university and five years of experience in large-scale purchasing; or an equivalent combination of training and experience.

[DE-23-6, pp.2-3]. Plaintiff timely applied for the SPA position. Upon reviewing Plaintiff's credentials, Defendant's human resources staff determined Plaintiff was qualified for the SPA position and forwarded her application to the hiring manager, Ms. Barbara Stone-Newton.

Under Defendant's "Merit Based Recruitment and Selection Plan and Procedure," once the hiring manager receives information about the minimally-qualified applicants, he or she "conducts a second level of evaluation to determine those applicants who are highly qualified." [DE-23-8, p.4]. "Highly qualified" applicants are those "who, to the greatest extent, possess qualifications, which exceed the minimum requirements, described in the vacancy announcement, including the selective criteria and [knowledge, skills and abilities]." [*Id.* at p.7]. A hiring manager may also convene a screening panel to conduct the second level of evaluations. [*Id.*]. The screening panel interviews the highly-qualified applicants by following a structured process wherein each candidate is asked the same questions. [DE-23-19, p.1]. Once the interviews are complete, a selection recommendation is made and forwarded to human resources. [*Id.* at p.5; DE-27-17, p.3]. A recruitment specialist in human resources then prepares the selection information for an "EEO review" by the EEO officer, who ensures that the selection process complies with Defendant's EEO Plan. [*Id.*]. When the EEO review is finished, the selection is submitted to the NCDOA Secretary for approval. [DE-27-17, p.4].

In this case, the hiring manager, Ms. Stone-Newton, determined Plaintiff was a "highly-qualified" applicant for the SPA Position and should be interviewed. Twenty-seven applicants, including Plaintiff, applied for the SPA Position. [DE-27-15]. Out of those twenty-seven applicants, eight were considered highly qualified. [*Id.*]. The highly-qualified applicants

4

consisted of five Caucasian applicants (four males and one female) and three African American applicants (two females and one male). [DE-2-2, p.12; DE-3, p.7].

On August 29, 2006, Plaintiff interviewed for the SPA position with an interview panel consisting of Ms. Stone-Newton (Caucasian female); James Westbrook (Caucasian male); James Staton (African American male) and David Womble (Caucasian male). [DE-2-2, p.8; DE-3, p.3]. Following the conclusion of all interviews, the interview panel recommended Timothy Lassiter, a Caucasian male, for the SPA position. [DE-2-2, p.9; DE-3, p.5]. No one on the interview panel consulted the EEO plan before recommending Mr. Lassiter. [DE-27-25, p.2; DE-27-23, p.2; DE-27-22, p.3]. On or about September 14, 2006, NCDOA Secretary Britt Cobb approved the selection of Mr. Lassiter to the SPA Position. [DE-2-2, p.10; DE-3, p.6]. Secretary Cobb did not actively participate in the selection process for the position and only served as an approval authority once he accepted the recommendation. [DE-3, p.5]. Contrary to policy, Defendant's human resources staff did not review the recommendation for EEO compliance before sending it to Secretary Cobb. [DE-2-2, p.10; DE-3, p.6]. After Secretary Cobb accepted the recommendation, human resources completed its EEO review on September 20, 2006. [DE-2-2, p.10; DE-3, p.6].

Defendant sent Plaintiff a letter informing her that another candidate had been selected "whose education and experience more closely matches the position requirements and organizational needs." [DE-27-16]. According to Ms. Stone-Newton, the interview panel selected Mr. Lassiter because of his "wider experience, more varied experience, managerial experience, supervisory." [DE-23-19, p.2]. His interview responses were also "more detailed, showed more depth, [and] appeared to have been perhaps better thought out." [*Id.* at p.3]. Comparing the education and experience of the two candidates, Mr. Lassiter had nineteen years,

5

six months' total purchasing experience, while Plaintiff had twelve years, two months' total experience in purchasing. [DE-27-14]. Mr. Lassiter also had more supervisory experience specifically in purchasing, with six years and eight months, while Plaintiff had no supervisory experience in purchasing. Plaintiff, however, had more total supervisory experience, with seven years and seven months, more total state service, and more experience at P&C. [DE-27-14]. Plaintiff also held a Bachelor of Arts degree in business education, while Mr. Lassiter possessed no undergraduate degree. During the initial screening process, the human resources staff discussed Mr. Lassiter's lack of a degree in a series of e-mails. [DE-27-19]. The human resources staff informed Ms. Stone-Newton that they calculated Mr. Lassiter's higher education as seventy-five quarter hours of college, based on his forty-five quarter hours studying economics and commercial art at Sandhills Community College and thirty quarter hours studying architectural technology at Holding Technical Institute. [DE-27-18, p.2; DE-27-19].

On October 18, 2006, Plaintiff filed a discrimination charge against Defendant with the Civil Rights Division of the North Carolina Office of Administrative Hearings alleging race and gender discrimination with regard to the SPA position. [DE-23-3]. After investigating the matter, the Civil Rights Division substantiated Plaintiff's claim and issued a notice of cause determination concluding there was reasonable cause to believe that Defendant had discriminated against Plaintiff. [DE-2-2, p.37].

In support of her claim, Plaintiff submitted affidavits from John Leaston, Karl Sanders, and Yvonne Holley, all of whom are African American and are current or former employees of P&C. John Leaston worked as a state purchaser at P&C from 1976 to 1993, and was the State Purchasing Officer from 1993 to 2003. Mr. Leaston believed there existed a hostile environment toward African American employees at P&C during his employment, in that African Americans

who applied for positions or promotions were denied in favor of lesser-qualified Caucasian applicants. From 1976 until 1987, Leaston was the only African American purchaser and "was regularly subjected to name-calling, including the use of racially derogatory terms." [DE-27-10, p.2]. Mr. Leaston stated that once he became director, he "worked to improve the atmosphere of race relations" at P&C, but he believed that these improvements have since "been lost, and the former environment of race discrimination has been re-created." [*Id.* at pp. 2-3].

Karl Sanders worked for P&C for six years until 2007, when he accepted a management position at the North Carolina Department of the Environment and Natural Resources ("NCDENR"). [DE-27-9, p.3]. Like Plaintiff, Mr. Sanders applied for the SPA position in 2006. When he learned that Mr. Lassiter had been selected for the position, Mr. Sanders was in "utter shock and disbelief," as he believed his qualifications "greatly exceeded" those of Mr. Lassiter. [DE-27-9, p.2]. Specifically, Mr. Sanders felt that his Bachelor of Science degree, his certification as a Certified Purchasing Manager, his training, and overall purchasing experience made him a better candidate. Mr. Sanders met with Mike Mangum, the State Purchasing Officer, and Ms. Stone-Newton, to discuss why he had not been selected. Mr. Mangum and Ms. Stone-Newton offered no explanation, but repeatedly stated "there were many qualified candidates." [*Id.*]. Mr. Sanders then "commented on the unfavorable climate that exists within [P&C] for the promotion of Black Purchasers and the feeling that many feel they are being discriminated against in the promotion process." [*Id.*]. He told Mr. Mangum and Ms. Stone-Newton that "many in the Division felt that there was a glass ceiling for minorities." [*Id.*]. Mr. Mangum responded that P&C had "actually been criticized for just the opposite." [*Id.*]. Mr. Sanders was shocked and asked, "Are you saying that there are too many minorities?" Mr. Mangum smiled and nodded his head affirmatively. [*Id.*]. Mr. Sanders thereafter left P&C to accept a

supervisory position at NCDENR. Mr. Sanders also filed a personal grievance with Defendant and a formal complaint with the Civil Rights Division of the Office of Administrative Hearings regarding the selection of Mr. Lassiter. [*Id.* at p.4].

Yvonne Holley has been employed at P&C since 1987. [DE-27-11]. She averred that in her twenty-four years at P&C, there had never been an African American female hired or promoted to a management position. [*Id.* at p.2]. Ms. Holley testified that, after Mr. Leaston left P&C, employment discrimination "resumed and accelerated" and that "[s]everal highly qualified African American Purchasers have been bypassed for promotions while Caucasian applicants with less education and experience were given the job." [*Id.* at p.2]. One such instance occurred when a State Procurement Specialist III position became available at P&C. According to Ms. Holley, the three African American women who applied for the job were college graduates with considerably more purchasing experience than the selected candidate, a Caucasian female who had only a high school diploma. Ms. Holley averred she had been repeatedly denied promotion in favor of less qualified Caucasian applicants. Like Plaintiff, Ms. Holley applied for the SPA position given to Mr. Lassiter. Ms. Holley was "shocked" when she learned of Mr. Lassiter's hiring because he had less education and seniority than any of the African American applicants. [*Id.* at 4]. Ms. Holley filed an internal grievance with Defendant's personnel office after being informed of the selection decision.

On March 20, 2008, Plaintiff was in her office discussing the recent promotion of a Caucasian female at P&C. [DE-23-9; DE-27-5, pp.128-30]. Plaintiff believed the promotion was an example of racial discrimination, because the woman selected had only a high school diploma and less years of experience than an African American female candidate with a master's degree who also applied. [DE-27-5, pp.128-30]. Plaintiff stated, in a loud and angry tone, "This

8

is the damndest place I ever saw. They discriminate against black folks, and then promote her. Next thing you know, she's going to be the State Purchasing Officer." [DE-23-9]. Mr. Lassiter, whose office was across the hall from Plaintiff's, overheard the comment and "felt it was unprofessional because it was loud enough for [him] to hear it and she was in her office and [he] was in [his] office." [DE-23-15, p.16]. When Mr. Lassiter spoke with Plaintiff regarding the incident, she acknowledged that she had been "upset and could have raised [her] voice." [DE-23-9]. Plaintiff received a written counseling for "unacceptable personal conduct," which was placed in her personnel file. [DE-23-9].

On July 16, 2009, Plaintiff filed a complaint against Defendant in Superior Court, Wake County, alleging employment discrimination and retaliation. [DE-2-2]. Defendant subsequently filed a notice removing the matter to this Court. [DE-1]. Defendant now seeks summary judgment on Plaintiff's claims. [DE-23]. Further facts are set out as necessary to discuss the legal issues at hand.

**II.   Legal analysis**

**A.  Summary Judgment**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment must come forward and demonstrate the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When making the summary judgment determination, the facts and all reasonable

inferences must be viewed in a light most favorable to the non-moving party. *See* Anderson, 477 U.S. at 255. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See id.* at 250. The moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-movant's evidence is insufficient to establish his claim. *See* Celotex Corp., 477 U.S. at 331. A trial judge faced with a summary judgment motion "must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252.

### B. Employment Discrimination

Plaintiff brings her claim pursuant to Title VII, which makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . discrimination through two avenues of proof." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision. *Id.* "The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor." *Id.* "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a

pretext for discrimination." *Id.* (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973)). To demonstrate the prima facie case of discrimination under the framework established by *McDonnell Douglas*, the plaintiff must present evidence that "'(1) [she] is a member of a protected group; (2) [she] applied for the position in question; (3) [she] was qualified for the position; and (4) [she] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.'" Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 544-545 (4th Cir. 2003) (quoting Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998)), *cert. denied*, 540 U.S. 1106 (2004). The employer may then defend itself by articulating a legitimate, nondiscriminatory reason for its decision. *Id.* If the employer meets this burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. "Once the parties satisfy their relatively modest obligations . . . 'the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against [her] because of [her] race.'" Fuller v. Phipps, 67 F.3d 1137, 1141 (4th Cir. 1995) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).

> "An employer would be entitled to a judgment as a matter of law if the record *conclusively* revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was *abundant and uncontroverted* independent evidence that no discrimination had occurred."

Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 649 (4th Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000)).

### C. Retaliation

Plaintiff also sets forth a claim in her complaint for retaliation. A plaintiff can prove illegal retaliation under Title VII by showing (1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of his employer; and (3) the employer took the adverse action because of the protected activity. Bryant, 333 F.3d at 543. Once the plaintiff makes this case, the employer can defend itself by producing evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* "It is then up to the jury to decide whether the adverse action was actually taken for the proffered reason, or if it was intended as a retaliatory measure." *Id.*

The undersigned now carefully considers Defendant's motion for summary judgment on Plaintiff's claims of employment discrimination and retaliation, taking all facts and reasonable inferences in the light most favorable to her.

### III. Discussion

### A. Employment Discrimination

Because there is no direct evidence of discrimination regarding Defendant's failure to promote Plaintiff, her claim is evaluated according to the *McDonnell Douglas* framework. Defendant agrees that "Plaintiff has met the requirements for the first three elements of the prima facie case." [DE-23-1, p.18]. Defendant contends, however, that Plaintiff has failed to establish the fourth element of her prima facie case, which requires proof that the job was given to another person under circumstances giving rise to an inference of discrimination. Bryant, 333 F.3d at 544-45. However, as the Fourth Circuit has noted, the plaintiff's burden of proof is not onerous, *see* Young v. Lehman, 748 F.2d 194, 197 (4th Cir. 1984), *cert. denied*, 471 U.S. 1061 (1985), and Plaintiff may satisfy the fourth prong of her prima facie case by showing that the position to

12

Case 5:09-cv-00346-FL   Document 30   Filed 03/22/11   Page 12 of 20

which she applied was filled by a similarly qualified applicant outside the protected class. *See, e.g.*, Hill, 354 F.3d at 285; Brinkley v. Harbour Rec. Club, 180 F.3d 598, 607 (4th Cir. 1999). In this case, Plaintiff produced material evidence showing she was among the most qualified applicants to apply for the position, and that another applicant outside the protected class, a Caucasian male, was selected. Thus, Plaintiff has satisfied the burden of establishing her prima facie case, and the burden of production now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its failure to promote Plaintiff.

"An employer may rebut a plaintiff's prima facie case by demonstrating that the person promoted was better qualified for the position." Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995). Defendant contends Mr. Lassiter was the most qualified candidate because (1) he had a wider range of purchasing experience within the state procurement system; (2) he had direct supervisory experience and training that Plaintiff lacked in purchasing, including being a Certified Public Buyer; and (3) his performance before the interview panel was superior to that of Plaintiff and all the other applicants. [DE-23-1, p.19]. The evidence showed that, at the time of the interview, Mr. Lassiter had seven more years' experience in purchasing than Plaintiff. He also had six years and eight months' supervisory experience in purchasing, while Plaintiff had none. Moreover, the interview panel unanimously found that Mr. Lassiter's responses during his interview exceeded those of the other candidates. An employer may properly consider subjective criteria such as "good interpersonal skills and [the] ability to lead a team" when evaluating candidates. Amirmokri, 60 F.3d at 1130. This evidence supports Defendant's contention that Mr. Lassiter was arguably better qualified than Plaintiff. Thus, Defendant has met its burden of presenting legitimate, nondiscriminatory reasons as to why it selected Mr. Lassiter instead of Plaintiff.

Plaintiff argues that Defendant's asserted rationale is pretextual and that there is sufficient evidence from which a reasonable juror could conclude that Defendant failed to promote her for discriminatory reasons. First, Plaintiff complains that Defendant defends its decision by selectively emphasizing criteria possessed by Mr. Lassiter that were not listed in the vacancy announcement for the SPA position. Plaintiff notes there was no requirement that the successful applicant have direct supervisory experience, certifications, or unique training in purchasing. The Fourth Circuit has recognized "the reality that an employer asked to justify its actions after the fact has an incentive to claim that the 'real' criteria were those on which the chosen employee happens to perform best relative to the plaintiff." Dennis, 290 F.3d at 647 n.2.

> When an employer picks one of a list of posted job qualifications and claims that it was actually decisive without regard to the others, the jury is certainly permitted to conclude, in light of the totality of the evidence, that this may have been done as a post hoc justification of a decision made on other grounds.

*Id.*

Plaintiff asserts her education and experience made her the superior candidate and that Defendant's proffered rationalizations are either untrue or weak at best. For example, Plaintiff contends the evidence shows Mr. Lassiter did not have a wider range of purchasing experience within the state procurement system. Before joining P&C, Mr. Lassiter worked for approximately thirteen years as a purchasing agent at the University of North Carolina at Chapel Hill and at North Carolina State University, where his "delegation level was only Ten Thousand ($10,000) Dollars and all of his purchases over Ten Thousand Dollars had to be bidded, reviewed and approved by [Yvonne Holley] as the Scientific Purchasing Specialist." [DE-27-11, p.3]. Until he joined P&C, Mr. Lassiter's salary grade was under 74. [DE-23-15, pp.4-10]. Like Ms. Holley, Plaintiff was a procurement specialist whose responsibilities included recommending approval of requests made by user agencies for purchases with delegations over

14

$10,000. Plaintiff's salary grade was 75. [DE-2-1, p.35]. Thus, argues Plaintiff, for thirteen out of his nineteen and a half years as a purchasing agent, Mr. Lassiter's authority and salary grade were less than hers. Plaintiff also notes that Yvonne Holley, another candidate for the SPA position, had twenty-four years of purchasing experience, five more than Mr. Lassiter. As such, argues Plaintiff, Mr. Lassiter did not have a wider range of purchasing experience within the state procurement system than the other candidates.

Plaintiff also disputes Defendant's assertion that Mr. Lassiter's supervisory experience in purchasing made him a superior candidate. Plaintiff argues she had more overall supervisory experience, and that the vacancy announcement did not list supervisory experience in purchasing as a requirement or preference. Plaintiff further notes that, out of all the candidates, Karl Sanders had the most supervisory experience, both specifically in purchasing (six years, eight months, with additional experience in administration) and in total (fifteen years, one month), and had earned a prestigious certification in public management as well. With respect to Mr. Lassiter's superior performance during the interview, Plaintiff asserts that such subjective criteria are "subject to particularly close scrutiny." Page v. Bolger, 645 F.2d 227, 230 (4th Cir. 1981). Plaintiff points to assertions by Karl Sanders that two members of the interview panel, James Westbrook and David Womble, were close friends with Mr. Lassiter. [DE-27-9, p.3]. Plaintiff argues that such evidence raises questions regarding the credibility of Defendant's justification of its selection of Mr. Lassiter.

Plaintiff contends additional evidence supports her assertion that Defendant's failure to promote her was discriminatory. First, Plaintiff asserts there is evidence of a generally hostile work environment for African Americans at P&C. John Leaston, Karl Sanders, and Yvonne Holley testified to various incidents they believed indicative of discrimination, particularly with

15

regard to Defendant's failure to promote African Americans. Sondra Chavis, Defendant's EEO officer, testified that, prior to 2006, she received complaints from three or four employees at P&C regarding a hostile work environment with respect to race, specifically concerning the lack of promotions for African Americans. [DE-27-6, pp.108-10]. Ms. Chavis expressed her concern about the complaints to Mike Mangum, the State Purchasing Officer, who told her that "none of his decisions were based upon race or gender." [*Id.*]. When Mr. Sanders expressed similar concerns to Mr. Mangum, he indicated that P&C had been criticized for having "too many minorities." [DE-27-9, p.2]. Plaintiff contends Mr. Mangum's statement reflects racial animus towards African Americans.

Plaintiff also points to Defendant's failure to follow its EEO plan and policy as evidence of discriminatory intent. Although Defendant's stated EEO goal was to hire an African-American female, no one consulted the EEO plan before recommending Mr. Lassiter, and, contrary to policy, the required EEO review was not performed until after Mr. Lassiter was hired. Finally, Plaintiff argues that the notice of cause determination issued by the Civil Rights Division of the North Carolina Office of Administrative Hearings, which found that Defendant had discriminated against Plaintiff, should be considered probative of her discrimination complaint.

Defendant responds that the EEO plan to hire a female African American for the SPA position was a goal, not a requirement, and that the delay in the EEO review was "merely an oversight with no substantive impact." [DE-23-1, p.12]. Nor was Defendant required to list managerial preferences in the vacancy announcement for the SPA position. Defendant also notes that other African American women have held prominent positions at NCDOA, although none have served in a supervisory position within P&C. Defendant states that the complaints received

by Ms. Chavis regarding an allegedly hostile work environment, as well as complaints of discrimination against two members of the interview panel, James Westbrook and David Womble, were never substantiated. Defendant argues Plaintiff has failed to show the existence of any genuine issues of material fact and that it is therefore entitled to summary judgment on her discrimination claim.

The Fourth Circuit has acknowledged "that the 'elusive factual question of intentional discrimination' is inevitably tough and rarely clear cut." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 301 (4th Cir. 2010) (quoting Burdine, 450 U.S. at 254 n.8). Although Defendant argues Mr. Lassiter was the superior candidate, the evidence submitted by Plaintiff casts sufficient doubt on that assertion to raise a genuine issue of material fact as to Defendant's motivation in its decision not to promote Plaintiff. For example, while the evidence does not necessarily contradict Defendant's assertion regarding the breadth of Mr. Lassiter's purchasing experience, it raises questions concerning its depth. A reasonable fact-finder could conclude that where, for the majority of his career in purchasing, Mr. Lassiter exercised less authority than Plaintiff and worked at a lower salary grade, presumably indicating less responsibility, Mr. Lassiter's purchasing experience was inferior to Plaintiff's. Plaintiff also presented evidence showing she was better-educated, had more experience at P&C, and more supervisory experience than Mr. Lassiter.

Moreover, Plaintiff need not show she was the superior candidate in order to refute Defendant's claim that it hired Mr. Lassiter for his superior qualifications. As the Fourth Circuit has noted:

> One way to prove the plaintiff's case would certainly be to show that her qualifications were so plainly superior that the employer could not have preferred another candidate. But an equally valid way to prove pretext is to provide evidence that the employer's proffered reason was not the actual reason relied on,

> but was rather a false description of its reasoning--albeit one based on a real difference in qualifications--manufactured after the fact.
>
> Indeed, this is often the only way a plaintiff can reasonably be expected to show pretext. Employers are free within certain bounds to choose the criteria by which they may legitimately assess employees. In comparing any two employees, it is often the case that each is superior on at least a few of the possible criteria that could be used in assessing their qualifications. Given these facts, it is not farfetched to suppose that discriminatory employers might be likely to choose to emphasize at trial those characteristics on which their chosen candidates were superior in order to construct pretextual explanations that are as plausible as possible. If plaintiffs were required to show they were superior on the criteria chosen at trial by their employers, rather than being free to show that the criteria were not the ones actually used, the *McDonnell Douglas* framework would become a shield for employers rather than a tool to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

Dennis, 290 F.3d at 648 n.4 (citing Burdine, 450 U.S. at 255).

Here, Plaintiff established her prima facie case and presented evidence showing there were no female African American managers in P&C, although African American female employees constituted more than a third of the workforce. [DE-27-4, p.10]. While Defendant's stated EEO goal was to hire an African American female for the SPA position, no one on the interview panel consulted the EEO Plan in their selection for the SPA Position. Defendant deviated from its policy and established practice by not conducting the required EEO review until after Mr. Lassiter was approved by Secretary Cobb. A reasonable trier of fact could conclude that the post-hoc review was a mere formality to give the appearance of EEO plan compliance, and that no true consideration was given to the target objectives of the EEO plan, in violation of state policy. Plaintiff also presented evidence from other African Americans at P&C, including the former head of the division, John Leaston. All testified to a widespread belief among many African Americans at P&C that well-qualified minority candidates were routinely passed over for promotion in favor of less-qualified Caucasian applicants and offered

specific examples. That African American women enjoyed positions of authority elsewhere at NCDOA does not refute the evidence with respect to P&C. *See* EEOC v. Sears Roebuck & Co., 243 F.3d 846, 855 (4th Cir. 2001) ("[S]imply because Sears hired other Hispanic individuals in other departments does not mean that its failure to hire Santana was free from discriminatory intent."). Finally, the statement by the head of P&C, Mr. Mangum, that P&C had been criticized for having "too many minorities" may be viewed as evidence of discriminatory intent.

"A plaintiff does not need a 'smoking gun' to prove invidious intent, and few plaintiffs will have one. Rather, '[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" Merritt, 601 F.3d at 299-300 (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)). While Defendant offered credible reasons for its decision, the question on summary judgment is not whether "the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252. Plaintiff presented sufficient evidence from which a reasonable trier of fact could conclude that Defendant's decision not to promote her was motivated at least in part by discriminatory intent. Disposition of Plaintiff's claim at the summary judgment stage would "intrude on the jury function by substituting our own judgment for that of the finder of fact." Dennis, 290 F.3d at 650. The undersigned therefore recommends that Defendant's motion for summary judgment on Plaintiff's claim of discrimination be denied.

### B. Retaliation

In contrast to her claim of discrimination, Plaintiff has presented insufficient evidence of retaliation by Defendant to survive summary judgment. Plaintiff argues she received a written counseling warning and was denied a timely in-range adjustment in her salary after filing her

claim against Defendant. Plaintiff presents no evidence, however, that Defendant engaged in either of these actions because of her discrimination complaint. Rather, the undisputed evidence shows Plaintiff was counseled for unacceptable personal conduct after she used obscenity and made unprofessional comments overheard by others in nearby offices. The evidence further showed that Plaintiff received an in-range compensation adjustment after performing additional responsibilities for six months, pursuant to Defendant's normal business practice. Plaintiff's attempts to draw a connection between the filing of her complaint and the alleged "retaliation" by Defendant are merely speculative. As such, the undersigned recommends that Defendant's motion for summary judgment regarding Plaintiff's claim of retaliation be granted.

## IV. Conclusion

Because genuine issues of material fact exist regarding Defendant's failure to promote Plaintiff, the undersigned recommends that Defendant's Motion for Summary Judgment [DE-23] with respect to Plaintiff's claim of discrimination be DENIED. The undersigned recommends the Motion for Summary Judgment [DE-23] as to Plaintiff's claim of retaliation be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, March 22, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE