IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-346-FL

| | | |
|---|---|---|
| MILDRED C. CHRISTMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF ADMINISTRATION, STATE OF | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

This employment discrimination and retaliation action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (2006), comes before the court upon defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (DE # 23). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge William A. Webb entered a memorandum and recommendation ("M&R") on March 22, 2011 (DE # 30). The magistrate judge recommends that the court grant the motion as to the retaliation claim, but deny the motion as to plaintiff's discrimination claim.

Each party timely objected to the M&R. Plaintiff argues that the magistrate judge erred in recommending summary judgment on the retaliation claim; defendant contends that the magistrate judge erred in recommending denial of summary judgment on the employment discrimination claim. Plaintiff filed a response to defendant's objection, and the time for further briefing has passed. In this posture, the issues raised are ripe for ruling.

Upon *de novo* review of the specific errors identified by the parties, the court overrules the objections and adopts the recommendation of the magistrate judge. Accordingly, for the reasons that follow, defendant's motion for summary judgment is denied in part and granted in part.

## STATEMENT OF THE CASE

On October 12, 2006, plaintiff filed a discrimination charge against defendant with the North Carolina Office of Administrative Hearings, Civil Rights Division ("CRD") in lieu of filing with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged race and gender discrimination based on denial of a promotion to State Purchase Administrator. The CRD concluded that there was sufficient evidence to believe that defendant acted with discriminatory intent. On September 18, 2008, the EEOC issued a similar finding. The parties' efforts at conciliation failed. The EEOC forwarded plaintiff's case to the U.S. Department of Justice ("DOJ"), which issued a right to sue notice on April 13, 2009.

Plaintiff filed a second charge against defendant with the CRD on January 7, 2008, alleging unlawful retaliation. She filed a third charge on May 5, 2008. Plaintiff alleged that the level of responsibility related to her job had decreased, while her duties had increased without additional compensation. Plaintiff also alleged that she was issued a written warning in retaliation for filing the previous charge. The EEOC did not find sufficient evidence to determine that defendant had violated the law. On June 24, 2009, the EEOC issued plaintiff a notice of her right to sue on the retaliation charges.

On July 15, 2009, plaintiff filed complaint in Wake County Superior Court, alleging discrimination on the basis of race, discrimination on the basis of gender, and retaliation, all under Title VII. Defendant removed plaintiff's action to this court on July 31, 2009. Shortly thereafter,

defendant filed answer denying liability. The court referred the case to a magistrate judge for early court-hosted settlement conference, but the parties were unable to reach a settlement.

On November 1, 2010, defendant filed this motion for summary judgment. Defendant's motion is supported by affidavits, deposition testimony, and other documentary evidence. Plaintiff responded in opposition on November 29, 2010, supporting her response with similar evidence. Defendant timely replied, and the matter was referred to the magistrate judge for M&R.

The magistrate judge filed his M&R on March 22, 2011, recommending that the court grant in part and deny in part defendant's motion. Plaintiff filed objection on April 5, 2011, with defendant following suit on April 8, 2011. Plaintiff filed a response to defendant's objections on April 25, 2011, as permitted by Local Civil Rule 72.4.

**STATEMENT OF THE UNDISPUTED FACTS**

The magistrate judge thoroughly reviewed the record presented by the parties, and drafted a detailed summary of the undisputed facts. The court concludes, upon its own careful review of the record, that the magistrate judge's factual summation is accurate. The court adopts this summary as its own, and will discuss additional facts as necessary in its analysis of plaintiff's claims. The undisputed facts in the light most favorable to plaintiff are as follows:

> Plaintiff is an African American female employed by [d]efendant since June 1, 1994. Plaintiff works as a Procurement Specialist III in the Division of Purchase and Contract, where she is responsible for reviewing and awarding contracts "for various specialized and complex services and commodities valued at millions of dollars." Before [her employment with defendant], [p]laintiff worked as a records management analyst at the North Carolina Department of Cultural Resources for fourteen years.
>
> On March 1, 2006, [d]efendant adopted an Equal Employment Opportunity Plan ("EEO plan") to comply with the EEO policy of North Carolina. The EEO plan stated, *inter alia*, that

> [t]o ensure that equal employment opportunity exists throughout the Department of Administration, a results oriented program will be implemented to overcome the effects of past discrimination and to eliminate any artificial barriers to employment opportunities for all qualified individuals that may exist in any of our programs.
>
> The Equal Employment Opportunity (EEO) program shall ensure greater utilization of all persons by identifying the underutilized groups based upon their representation in the workforce and making special efforts to increase their participation in recruitment, selection, training and development, upward mobility programs, and any other terms, condition, or privilege of employment.

The EEO plan also acknowledged that

> [s]tudies have shown that discriminatory practices occur more often in the selection process than in any other area of employment practices. An effective EEO plan includes procedures to review and evaluate each step of the selection process to assure that job requirements, selection procedures, hiring standards, and the placement process contribute to the achievement of program objectives and does not discriminate in the categories of race, color, religion, creed, sex, national origin, age, disabling condition, sexual orientation, and marital status.

The EEO plan identified underutilization of African American females in the "Officials and Administrators" category within the Division of Purchase and Contract ("P&C"). Defendant had no African American female managers in P&C. The EEO plan established a recruitment goal of hiring an African American female as a State Purchase Administrator to resolve this underutilization. The EEO plan did not require [d]efendant to hire an African American female, however.

On July 18, 2006, the DOA announced a vacancy for the position of State Purchasing Administrator, Position No. 6709 ("SPA position"), in P&C. The job posting described the SPA position as follows:

> This is an administrative and management position that functions as the Purchasing Manager that oversees Purchasing Group 2. This position directs and supervises the activities and operations of this purchasing group consisting of six purchasers and one support person in performance of statutory duties, which involves oversight of contracts valued at millions of dollars; as well as ensures delivery of customer satisfaction and adherence to statutory responsibilities to State Agencies, Community Colleges, and Universities. Manager

4

will ensure purchasers communicate with the supplier community to convey procurement procedures and to improve contractor performance. Manager will ensure use and promotion of e-commerce initiatives. Manager coordinates the workflow of open-market purchases and statewide term contracts assigned to the group and monitors these contracts to identify potential improvements. Frequently will participate in resolving contract controversies/protests to ensure positive outcomes for the State which may involve interaction with the Attorney General's Office. Develops relationships that extend the group's ability to reach more customers, provides proper guidance and direction to assigned staff, and implements processes that will develop and enhance procurement competencies within the group. The Manager is expected to participate in activities that will lead to greater awareness and increased compliance with the procurement laws of the State of North Carolina. In addition, the Manager participates in a variety of seminars, conferences and meetings which may involve some travel to include overnight. As a manager, this position is responsible for the development and administration of work plans to meet unit objectives, coaching and counseling of employees, and proper reporting of group activities and achievements. Manager also assists in the analysis and tracking of emerging procurement issues. The employee in this position plans, prioritizes, and prescribes the group's processes needed to achieve objectives within the framework of relevant laws and departmental policies. Knowledge of legal, technical, and ethical principles of large scale purchasing is necessary. Work requires the ability to make sound application of these principles to complex purchasing problems. Knowledge of large scale purchasing methods and procedures is required. Ability to supervise and manage people through planning, interaction management, problem solving, goal setting and leadership. Position requires an individual who is able to interact well and establish effective working relationships with associates, officials and vendors. Ability to effectively explain purchasing decisions to agency officials, bidders, and the public. This position requires an individual who has well-developed interpersonal, communication, managerial, organizational and computer skills. Work is performed on a personal computer in a Windows environment using Microsoft Office software in a Local Area Network (LAN) configuration.

TRAINING AND EXPERIENCE: Graduation from a four-year college or university and five years of experience in large-scale purchasing; or an equivalent combination of training and experience.

5

Case 5:09-cv-00346-FL   Document 34   Filed 05/16/11   Page 5 of 20

Plaintiff timely applied for the SPA position. Upon reviewing [p]laintiff's credentials, [d]efendant's human resources staff determined [p]laintiff was qualified for the SPA position and forwarded her application to the hiring manager, Ms. Barbara Stone-Newton.

Under [d]efendant's "Merit Based Recruitment and Selection Plan and Procedure," once the hiring manager receives information about the minimally-qualified applicants, he or she "conducts a second level of evaluation to determine those applicants who are highly qualified." "Highly qualified" applicants are those "who, to the greatest extent, possess qualifications, which exceed the minimum requirements, described in the vacancy announcement, including the selective criteria and [knowledge, skills and abilities]." A hiring manager may also convene a screening panel to conduct the second level of evaluations. The screening panel interviews the highly-qualified applicants by following a structured process wherein each candidate is asked the same questions. Once the interviews are complete, a selection recommendation is made and forwarded to human resources. A recruitment specialist in human resources then prepares the selection information for an "EEO review" by the EEO officer, who ensures that the selection process complies with [d]efendant's EEO [p]lan. When the EEO review is finished, the selection is submitted to the NCDOA Secretary for approval.

In this case, the hiring manager, Ms. Stone-Newton, determined [p]laintiff was a "highly-qualified" applicant for the SPA Position and should be interviewed. Twenty-seven applicants, including [p]laintiff, applied for the SPA Position. Out of those twenty-seven applicants, eight were considered highly qualified. The highly-qualified applicants consisted of five Caucasian applicants (four males and one female) and three African American applicants (two females and one male).

On August 29, 2006, [p]laintiff interviewed for the SPA position with an interview panel consisting of Ms. Stone-Newton (Caucasian female); James Westbrook (Caucasian male); James Staton (African American male) and David Womble (Caucasian male). Following the conclusion of all interviews, the interview panel recommended Timothy Lassiter, a Caucasian male, for the SPA position. No one on the interview panel consulted the EEO plan before recommending Mr. Lassiter. On or about September 14, 2006, NCDOA Secretary Britt Cobb approved the selection of Mr. Lassiter to the SPA Position. Secretary Cobb did not actively participate in the selection process for the position and only served as an approval authority once he accepted the recommendation. Contrary to policy, [d]efendant's human resources staff did not review the recommendation for EEO compliance before sending it to Secretary Cobb. After Secretary Cobb accepted the recommendation, human resources completed its EEO review on September 20, 2006.

Defendant sent [p]laintiff a letter informing her that another candidate had been selected "whose education and experience more closely matches the position

6

requirements and organizational needs." According to Ms. Stone-Newton, the interview panel selected Mr. Lassiter because of his "wider experience, more varied experience, managerial experience, supervisory." His interview responses were also "more detailed, showed more depth, [and] appeared to have been perhaps better thought out." Comparing the education and experience of the two candidates, Mr. Lassiter had nineteen years, six months' total purchasing experience, while [p]laintiff had twelve years, two months' total experience in purchasing. Mr. Lassiter also had more supervisory experience specifically in purchasing, with six years and eight months, while [p]laintiff had no supervisory experience in purchasing. Plaintiff, however, had more total supervisory experience, with seven years and seven months, more total state service, and more experience at P&C. Plaintiff also held a Bachelor of Arts degree in business education, while Mr. Lassiter possessed no undergraduate degree. During the initial screening process, the human resources staff discussed Mr. Lassiter's lack of a degree in a series of e-mails. The human resources staff informed Ms. Stone-Newton that they calculated Mr. Lassiter's higher education as seventy-five quarter hours of college, based on his forty-five quarter hours studying economics and commercial art at Sandhills Community College and thirty quarter hours studying architectural technology at Holding Technical Institute.

* * *

In support of her claim [of discrimination], [p]laintiff submitted affidavits from John Leaston, Karl Sanders, and Yvonne Holley, all of whom are African American and are current or former employees of P&C. John Leaston worked as a state purchaser at P&C from 1976 to 1993, and was the State Purchasing Officer from 1993 to 2003. Mr. Leaston believed there existed a hostile environment toward African American employees at P&C during his employment, in that African Americans who applied for positions or promotions were denied in favor of lesser-qualified Caucasian applicants. From 1976 until 1987, Leaston was the only African American purchaser and "was regularly subjected to name-calling, including the use of racially derogatory terms." Mr. Leaston stated that once he became director, he "worked to improve the atmosphere of race relations" at P&C, but he believed that these improvements have since "been lost, and the former environment of race discrimination has been re-created."

Karl Sanders worked for P&C for six years until 2007, when he accepted a management position at the North Carolina Department of the Environment and Natural Resources ("NCDENR"). Like Plaintiff, Mr. Sanders applied for the SPA position in 2006. When he learned that Mr. Lassiter had been selected for the position, Mr. Sanders was in "utter shock and disbelief," as he believed his qualifications "greatly exceeded" those of Mr. Lassiter. Specifically, Mr. Sanders felt that his Bachelor of Science degree, his certification as a Certified Purchasing Manager, his training, and overall purchasing experience made him a better candidate. Mr. Sanders met with Mike Mangum, the State Purchasing Officer, and

7

Ms. Stone-Newton, to discuss why he had not been selected. Mr. Mangum and Ms. Stone-Newton offered no explanation, but repeatedly stated "there were many qualified candidates." Mr. Sanders then "commented on the unfavorable climate that exists within [P&C] for the promotion of Black Purchasers and the feeling that many feel they are being discriminated against in the promotion process." He told Mr. Mangum and Ms. Stone-Newton that "many in the Division felt that there was a glass ceiling for minorities." Mr. Mangum responded that P&C had "actually been criticized for just the opposite." Mr. Sanders was shocked and asked, "Are you saying that there are too many minorities?" Mr. Mangum smiled and nodded his head affirmatively. Mr. Sanders thereafter left P&C to accept a supervisory position at NCDENR. Mr. Sanders also filed a personal grievance with Defendant and a formal complaint with the Civil Rights Division of the Office of Administrative Hearings regarding the selection of Mr. Lassiter.

Yvonne Holley has been employed at P&C since 1987. She averred that in her twenty-four years at P&C, there had never been an African American female hired or promoted to a management position. Ms. Holley testified that, after Mr. Leaston left P&C, employment discrimination "resumed and accelerated" and that "[s]everal highly qualified African American Purchasers have been bypassed for promotions while Caucasian applicants with less education and experience were given the job." One such instance occurred when a State Procurement Specialist III position became available at P&C. According to Ms. Holley, the three African American women who applied for the job were college graduates with considerably more purchasing experience than the selected candidate, a Caucasian female who had only a high school diploma. Ms. Holley averred she had been repeatedly denied promotion in favor of less qualified Caucasian applicants. Like [p]laintiff, Ms. Holley applied for the SPA position given to Mr. Lassiter. Ms. Holley was "shocked" when she learned of Mr. Lassiter's hiring because he had less education and seniority than any of the African American applicants. Ms. Holley filed an internal grievance with [d]efendant's personnel office after being informed of the selection decision.

On March 20, 2008, [p]laintiff was in her office discussing the recent promotion of a Caucasian female at P&C. Plaintiff believed the promotion was an example of racial discrimination, because the woman selected had only a high school diploma and less years of experience than an African American female candidate with a master's degree who also applied. Plaintiff stated, in a loud and angry tone, "This is the damndest place I ever saw. They discriminate against black folks, and then promote her. Next thing you know, she's going to be the State Purchasing Officer." Mr. Lassiter, whose office was across the hall from [p]laintiff's, overheard the comment and "felt it was unprofessional because it was loud enough for [him] to hear it and she was in her office and [he] was in [his] office." When Mr. Lassiter spoke with [p]laintiff regarding the incident, she acknowledged that she had been

8

"upset and could have raised [her] voice." Plaintiff received a written counseling for "unacceptable personal conduct," which was placed in her personnel file.

M&R 1-9 (internal citations omitted; some alterations in original).

## DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

As noted, this summary judgment motion comes before the court with benefit of the thoughtful analysis of the magistrate judge. The court reviews *de novo* only those portions of a magistrate judge's M&R to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Upon review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

9

B.  Analysis

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex," 42 U.S.C. § 2000e-2(a)(1), or to discriminate against any employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge . . . under [Title VII]," id. § 2000e-3(a).  Where, as here, a plaintiff lacks direct evidence of discrimination, she may rely on the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007) (applying McDonell Douglas framework to a sex discrimination claim); id. at 649-50 (applying McDonnell Douglas framework to a Title VII retaliation claim).

Satisfaction of the McDonnell Douglas test is a three-step process.  First, plaintiff must put forward sufficient evidence to

> establish[] a prima facie case of discrimination [or retaliation] . . . . If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate . . . reason for the adverse employment action . . . . Assuming the employer meets this burden of production, . . . the burden shifts back to plaintiff to prove by a preponderance of the evidence that the employer's stated reasons . . . were a pretext for discrimination [or retaliation].

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc); see also EEOC. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).

1.  Race and Sex Discrimination

To demonstrate a *prima facie* case of discrimination for failure to promote, plaintiff must show that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for the position, and (4) the defendant[] rejected her application under

10

circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The fourth element, "an inference of unlawful discrimination," is satisfied where a position is filled by an applicant outside plaintiff's protected group. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

As did the magistrate judge, the court concludes that each of these elements has been satisfied by plaintiff with respect to defendant's failure to select her for the SPA position. Plaintiff is a member of a protected group by virtue of her sex and race. She applied for the SPA position, and defendant admits that she was qualified for that position. Finally, plaintiff was rejected in favor of Mr. Lassiter, who is of a different race and sex. Accordingly, plaintiff has satisfied her burden of establishing a *prima facie* case of discrimination for failure to promote.

Because plaintiff has made her *prima facie* case, the burden is shifted to defendant to offer a legitimate, nondiscriminatory reason for selecting Mr. Lassiter for the position instead of plaintiff. Hill, 354 F.3d at 285. Defendant suggested that Mr. Lassiter was more qualified than plaintiff because he had a wider range of purchasing experience within the state procurement system and had direct supervisory experience and training that plaintiff lacked. Defendant also stated that Mr. Lassiter's performance before the interview panel was superior to that of plaintiff or any other applicant. The magistrate judge found that the "evidence supports [d]efendant's contention that Mr. Lassiter was arguably better qualified than [p]laintiff," and that these justifications were sufficient to meet defendant's burden of presenting legitimate, nondiscriminatory reasons for its decision. See M&R 13. No party has objected to this conclusion, and it is not clearly erroneous.[1]

---

[1] In its objection to the M&R, defendant argues that the magistrate judge disregarded the legitimate, non-discriminatory reasons given by defendant for the selection of Mr. Lassiter. As noted, the magistrate judge in fact cited each of the proffered reasons as legitimate and non-discriminatory.

11

At the third and final step of the McDonnell Douglas analysis, the burden shifts back to plaintiff to show that the legitimate, non-discriminatory reason offered by defendant was in fact a pretext for discrimination. Hill, 354 F.3d at 285. As the Supreme Court has noted, "[t]his burden . . . merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Plaintiff need not prove that she was the superior candidate, but instead need only produce "evidence that the employer's proffered reason was not the actual reason relied on, but was rather a false description of its reasoning – albeit one based on a real difference in qualifications – manufactured after the fact." Dennis v. Columbia Collection Med. Ctr., Inc., 290 F.3d 639, 648 n.4 (4th Cir. 2002) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000); Burdine, 450 U.S. at 255).

The magistrate judge concluded that plaintiff had put forward sufficient evidence of pretext to survive defendant's summary judgment motion. Although the magistrate judge cited a number of factors in making his recommendation, defendant's objections focus on (1) the magistrate judge's purported misunderstanding of the relative procurement experience of Mr. Lassiter and plaintiff; (2) the "vague" allegations of other African-American employees of a generally hostile work environment; and (3) the statement of Mike Mangum, the then State Purchasing Office, regarding the number of minorities in P&C. These objections do not have merit

Defendant first suggests that the magistrate judge erred in concluding that for much of his career at the University of North Carolina at Chapel Hill ("UNC") and North Carolina State

12

University ("NC State"), Mr. Lassiter's designation level for purchasing items without a supervisor's approval was only $10,000.00. In support of its objection, defendant notes that UNC and NC State had delegated authority for purchases in the amount of $250,000.00 in 1997 and $500,000.00 in 2003. But as plaintiff points out in her response to that objection, Mr. Lassiter was employed by UNC from 1986 through 1988, and at NC State from 1988 to 1999. Mr. Lassiter only had authority to approve purchases up to $250,000.00 from January 1998 until February 1999, when he left NC State. In other words, from 1986 through 1998, his designation level ranged from $5,000.00 to $25,000.00, consistent with the magistrate judge's finding that his designation level for purchasing was lower than that of plaintiff and other minority applicants.[2]

Defendant next argues that the magistrate judge improperly relied on "vague" allegations made by other African-Americans employed by P&C. After reviewing the affidavits of these employees, the court concludes that they were properly relied upon by the magistrate judge. The allegations are not particularly vague.[3] Instead, they are based on personal knowledge and tend to support the employees' impression that there is a glass ceiling for minorities working at P&C, which in turn lends some support to plaintiff's contention that defendant's justification for failing to promote plaintiff was merely a pretext for discrimination.

---

[2] Defendant's contention that the magistrate judge erred in overstating plaintiff's authority in approving or rejecting proposed service contracts suffers from a similar temporal problem. According to the evidence put forward by plaintiff, she did have such authority until Mr. Mangum changed the policy in 2004.

[3] For example, Karl Sanders relates a particular conversation he had with Mike Mangum in which the latter indicated that there were "too many minorities" at P&C. Mr. Sanders also described an exclusive white-only group of state purchasers who met together for lunch every day and who acted to promote one another within P&C. John Leaston discussed being passed over for a promotion seventeen times in a seventeen year period, and stated that he was regularly subject to racial name-calling. Mr. Leaston also stated that white managers opposed his decision once he became the State Purchasing Officer to promote another African-American within P&C. Yvonne Holley described a specific instance of American-American women being passed over for promotion, and stated that she knew of African-American employees who resigned after they were passed over for a promotion.

13

One of the specific allegations in the affidavits of the African-American employees challenged by defendant is Karl Sanders' statement that Mike Mangum, the State Purchasing Officer, told him that there were "too many minorities" in P&C. Although defendant denies that Mr. Mangum made this comment, the court must of course accept Mr. Sanders' version as true for purposes of summary judgment, because it supports plaintiff's allegations. Defendant also argues that the statement at best indicates that there are people who disagree with Mr. Sanders that there was a glass ceiling or hostile work environment for minorities at P&C, which is not itself evidence of discriminatory animus. The court, however, believes that it is possible that a jury would conclude that Mr. Mangum's statements indicated a hostility towards hiring or promoting more minorities within P&C, which would support plaintiff's Title VII discrimination claim.

The court notes that a number of the factors that the magistrate judge identified as evidence of pretext have not been challenged by defendant. For example, the magistrate judge concluded that defendant's resort to subjective criteria to defend its selection of Mr. Lassiter is consistent with a pretextual explanation. See, e.g., Ham v. Wash. Suburban Sanity Comm'n, 158 F. App'x 457, 466-67 (4th Cir. 2005) (unpublished) (finding evidence of pretext in employer's "preoccupation with subjective, tangential qualities" and citing cases from other circuits noting that reliance on factors outside of job description may also be evidence of pretext); Page v. Bolger, 645 F.2d 227, 230 (4th Cir. 1981) (en banc) (noting that an evaluation based on subjective criteria may be subject to "particularly close scrutiny by the trial judge"). The magistrate judge also agreed with plaintiff that defendant's emphasis on criteria and qualifications possessed by Mr. Lassiter which were not contained within the vacancy announcement was evidence of pretext. Cf. Dennis, 290 F.3d at 647 n.2 (finding evidence of pretext where "an employer picks one of a list of posted job qualifications

14

and claims that it was actually decisive without regard to the others").[4]

Defendant was also unable to muster any objection to the magistrate judge's conclusion that defendant's failure to follow its EEO plan, and its decision to conduct the required EEO review only after Mr. Lassiter's selection was approved, is evidence of pretext. Although "[f]ailure to follow the requirements of an affirmative action plan . . . is not *conclusive* evidence of racial discrimination," Love v. Alamance Cnty. Bd. of Educ., 757 F.2d 1504, 1509 (4th Cir. 1985) (emphasis added), the magistrate judge did not clearly err in concluding that defendant's failure to follow the EEO plan is evidence of pretext, and that a reasonable jury could interpret this failure as evidence supporting an inference of discrimination. See, e.g., Pham v. City of Seattle, 7 F. App'x 575, 577-78 (9th Cir. 2001) (unpublished) (holding that employer's failure to "follow its own affirmative action plan, []or its own normal procedures, in selecting employees for the positions" is evidence of pretext); Antol v. Perry, 82 F.3d 1291, 1303 (3d Cir. 1996) ("[T]he failure to follow Agency procedures [and] the decisionmakers' active resistance to the affirmative action plan . . . permit a finding of pretext."); Mozee v. Am. Commercial Marine Serv. Co., 940 F.2d 1036, 1051 (7th Cir. 1991) ("[Employer's] noncompliance with its various affirmative-action plans [is] probative of discriminatory intent."); Craik v. Minn. State Univ. Bd., 731 F.2d 465, 472 (8th Cir. 1984) ("[E]vidence that an employer has failed to live up to an affirmative-action plan is relevant to the question of discriminatory intent.").

At bottom, this court must remember that, "[n]otwithstanding the intricacies of [the McDonnell Douglas] proof scheme[], the core of every Title VII case remains the same,

---

[4] Although non-precedential case law from this circuit suggests that reliance on credentials outside those listed in the relevant job description is not evidence of pretext, see Lamb v. Boeing Co., 213 F. App'x 175, 180 (4th Cir. 2007) (unpublished), the court cannot find that the magistrate judge clearly erred in the circumstances presented here.

15

necessitating resolution of the ultimate question of discrimination *vel non*." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294-95 (4th Cir. 2010) (internal quotation marks omitted). Upon *de novo* review, the court agrees with the magistrate judge that the lack of female African-American managers at P&C, defendant's failure to follow the EEO plan, the statements of other African-American regarding minorities being repeatedly passed over in favor of less qualified Caucasian candidates, the statement of the head of P&C that there were "too many minorities" in the department, and the fact that Mr. Lassiter may well have been less qualified (by defendant's own standards) than plaintiff and other African-American applicants, is sufficient evidence to put the question of discrimination before a jury. Accordingly, defendant's motion for summary judgment on plaintiff's Title VII discrimination claim is DENIED.

      2.     Retaliation

Plaintiff's retaliation claim is premised on two separate incidents. The first incident occurred in March 2007, when plaintiff was refused an in-range salary adjustment after she had been performing additional duties for approximately five months. When she did not receive the adjustment, she filed a retaliation claim on January 7, 2008. The second incident occurred two months later on March 20, 2008, when plaintiff was given a written counseling warning after Mr. Lassiter overheard her in her office saying, "This is the damndest place I ever saw. They discriminate against black folks. The next thing you know, she's going to be the State Purchasing Officer." Plaintiff made this statement in connection with the promotion of another individual in circumstances she felt evidenced discrimination against African-Americans.

To demonstrate a *prima facie* case of retaliation under Title VII, plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link

16

between the protected activity and the employment action." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). "[V]ery little evidence of a causal connection is required to establish a prima facie case," Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and the third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action, see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Plaintiff's filing of a discrimination charge on October 12, 2006, and a retaliation charge on January 8, 2008, are protected activities. See 42 U.S.C. § 2000e-3(a). But the magistrate judge, assuming without deciding that the failure to grant an in-range salary increase and the issuance of a written counseling warning were both adverse employment actions, concluded that plaintiff had not put forward sufficient evidence to causally connect defendant's actions to these protected activities. Accordingly, he concluded that plaintiff had not made her *prima facie* case.

The court agrees with the magistrate judge that plaintiff has not put forward sufficient evidence to link the denial of her request for an in-range salary increase and the filing of her discrimination charge with CRD. She made her request (and was denied) approximately five months after filing the charge, which is not the sort of "very close" temporal proximity which, standing alone, will support an inference of a causal link. See Clark Cnty. Sch. Dist., 532 U.S. at 273 (citing with approval cases from the Tenth and Seventh Circuits holding that a gap of as little as three to

17

four months between protected activity and adverse action is too long to raise this inference). Where no other evidence of a link between the filing of the discrimination charge and the denial of her request for an in-range adjustment has been offered, plaintiff has not made her *prima facie* case.

The court must disagree, however, with the magistrate judge's conclusion that plaintiff put forward insufficient evidence of a causal link between the filing of plaintiff's discrimination and first retaliation charges and her written counseling warning. That warning, which remains in plaintiff's personnel file as potential evidence of a "pattern of unsatisfactory job performance" and was accompanied by veiled threats of termination, is sufficiently adverse in that it "might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination [or retaliation]." See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. Moreover, the court finds a sufficient casual connection between that warning and plaintiff's exercise of protected activity where (1) the warning was issued in connection with plaintiff's expression of her belief that defendant was continuing to discriminate against African-American women, and (2) Mr. Lassiter – the same individual who received the promotion over plaintiff in the action forming the basis for plaintiff's discrimination charges – initiated the written counseling warning.

Nevertheless, plaintiff's retaliation claim fails because defendant has offered a legitimate, nondiscriminatory reason for the written counseling, and plaintiff has not put forward sufficient evidence to show that this explanation is merely pretextual. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Specifically, defendant has met its burden by showing that the written counseling warning was issued because plaintiff raised her voice and was disruptive. Plaintiff's evidence of pretext, on the other hand, appears limited to her assertions that no one but

18

Mr. Lassiter heard her comment and that defendant appears to have been concerned with the comment's potential effect on race relations in the office.[5]

Plaintiff's pretext argument ignores the fact that using foul language and speaking in a loud and angry voice in the workplace about *any* personal opinion is inappropriate and disruptive, regardless of whether you are actually heard by one fellow employee or a hundred. Although it would be inappropriate for defendant to discipline plaintiff for filing discrimination charges or opposing discriminatory conduct, the court cannot say that it is inappropriate to discipline her for expressing the same underlying opinions in a disruptive manner. There is no evidence that plaintiff received a written counseling warning because she believed discrimination was occurring; instead, the evidence indicates that she received the warning because she expressed that opinion in a way that was unprofessional and disruptive. Accordingly, defendant's motion for summary judgment on the retaliation claim is GRANTED.

## CONCLUSION

Upon *de novo* review of those portions of the M&R (DE # 30) to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court OVERRULES the parties' objections and ADOPTS the findings and recommendations of the magistrate judge as its own. Accordingly, defendant's motion for summary judgment (DE # 23) is GRANTED IN PART AND DENIED IN PART. The motion is

---

[5] For example, Sondra Chavis, the Employee Relations Manager, and James Staton, the State Purchasing Officer following Mike Mangum, testified that they had a conversation discussing the comment as disruptive "given the climate of the Division." (Chavis Dep. 111:21-24.) Mr. Staton thought it would have been particularly bad "if the race word was used like 'white.'" (Staton Dep. 181:2-4.)

19

granted as to plaintiff's Title VII retaliation claim. The motion is denied as to plaintiff's Title VII discrimination claim, which shall proceed to trial. The court will enter a separate order directing the parties as to scheduling matters shortly.

SO ORDERED, this the 16th day of May, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge